# In the United States Court of Federal Claims

No. 18-111L

(Filed: July 9, 2020)

```
*************************************  *
                                       *
                                       *
CHESHIRE HUNT, INC., et al.,           *
                                       *
                                       *
                      Plaintiffs,      *      Motion to Stay; Rails-to-Trails;
                                       *      Fifth Amendment Taking;
v.                                     *      Indefinite Stay; Pressing Need.
                                       *
THE UNITED STATES,                     *
                                       *
                      Defendant.       *
                                       *
*************************************  *
```

*Lindsay S.C. Brinton*, with whom was *Meghan S. Largent*, Lewis Rice LLC, St. Louis, Missouri, for Plaintiffs.

*Mark F. (Thor) Hearne, II*, with whom was *Stephen S. Davis*, True North Law, LLC, St. Louis, Missouri, for Plaintiffs.

*Zachary West*, Trial Attorney, with whom was *Prerak Shah*, Deputy Assistant Attorney General, Environment & Natural Resources Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This is a rails-to-trails Fifth Amendment takings case in which the Plaintiffs are seeking compensation for the Government's alleged taking of a railroad easement over their property. Now before the Court is the Government's motion to stay this case pending the resolution of a quiet title action in the Middle District of Florida that concerns part of the railroad right-of-way. For the reasons that are discussed below, the Court DENIES the Government's motion to stay this case.

Background

The Government brought a motion to stay just compensation proceedings in this case pending a decision in Grames v. Sarasota County, No. 20-739, a quiet title class action in the Middle District of Florida. Dkt. 92 at 8. This motion is opposed by the Plaintiffs. Dkt. 95 at 1; Dkt. 97 at 1. This case is one of nine cases currently before the Court alleging that the Government violated the Takings Clause of the Fifth Amendment when it authorized the conversion of railroad rights-of-way into public recreational trails in Sarasota County, Florida, without compensating the private property owners. Dkt. 92 at 2. The five plaintiffs in Grames are also party to 4023 Sawyer Road I, 19-757L, a related case currently pending before this Court, but not to Cheshire Hunt. Dkt. 97 at 5.

The right-of-way in question was established in 1910 when private landowners granted Seabord Railway an easement to construct a railroad from Sarasota to Venice. Dkt. 92-1 at 10. Seabord transferred this easement to CSX Transportation ("CSXT") to continue to use the railway corridor. Id. at 12. Beginning in April 2004, CSXT notified the Surface Transportation Board ("STB") of its intent to abandon the right-of-way. Id. at 14. The STB then issued a Notice of Interim Trails Use or Abandonment, invoking Section 8(d) of the Rails to Trails Act to transfer the right-of-way to Sarasota County, forming the Legacy Trail. Id. at 13. Just compensation was paid for the taking of the southern segment in 2014. See, e.g., id. at 14; Rogers v. United States, 90 Fed. Cl. 418 (2009). The cases currently before this Court concern the middle segment and northern extension of the Legacy Trail. Id. at 12–14.

In March 2020, a small percentage of the total plaintiffs in 4023 Sawyer Road I brought Grames, a putative class-action to quiet title in the Middle District of Florida. Id. at 1–2. Affected landowners brought that suit in response to Sarasota County issuing letters stating that various improvements to the landowners' properties, including pools, sewage infrastructure, and fences encroached on the right-of-way. Id. at 15. The County claimed to own this property and threatened to demolish the improvements, dump the debris on the landowners' property, and bill them for the costs. Id. The class has not yet been certified and the potential putative class members are narrowly defined as owners who are party to these rails-to-trails cases and who have also received demands from the County that they remove existing encroachments. As a result, most of the plaintiffs in these rails-to-trails cases are ineligible to be party to Grames. Dkt. 97 at 5–6.

The plaintiffs in Grames are seeking an injunction preventing the County from demolishing the improvements until the Florida court resolves the ownership claims, and they are seeking to quiet title in their favor. Id. at 1. The issue is whether the County's use of the right-of-way is exclusive or non-exclusive. Dkt. 92 at 3. The Government claims that this determination will impact the property valuations for purposes of compensating for the taking in Cheshire Hunt and related cases, and therefore, is requesting to stay all proceedings. Id. at 1. The Government's motion is fully briefed and ripe for decision.

Discussion

I. Standard of Review

    A. Broad Discretion to Stay Cases

Each trial court has the discretion to determine how to manage the cases before it. As discussed by the Supreme Court in Landis v. North American Co., "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket." 299 U.S. 248, 254 (1936). This broad discretion applies to stays in this Court pending the resolution of various types of proceedings before different courts and administrative bodies. See, e.g., Martinez v. United States, 333 F.3d 1295, 1309 (Fed. Cir. 2003) (stay granted pending an administrative proceeding); National Bank of Detroit v. United States, 1 Cl. Ct. 712, 716 (1983) (stay granted pending state court proceedings); HighQBPO, LLC v. United States, 84 Fed. Cl. 360, 362 (2008) (stay granted pending criminal proceedings). In deciding whether to stay a case, the burden is on the proponent to establish the need for a stay. See Clinton v. Jones, 520 U.S. 681, 708 (1997).

    B. Stay Would Be Indefinite

Though this Court has broad discretion to stay cases, when the proposed stay would be indefinite, the Court must subject it to a higher level of examination and justification. See Cherokee Nation v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997). A stay is considered indefinite when it is issued pending final resolution of another case. See Consolidation Coal Co. v. United States, 102 Fed. Cl. 489, 492–93 (2011). However, this Court has identified some exceptions. A stay pending resolution of another case may not be considered indefinite when all of the plaintiffs have some control over the timing in the other case, particularly when the plaintiffs are not innocent in creating the delay. In re Sacramento Municipal Utility District ("SMUD"), 395 F. App'x 684, 687 (Fed. Cir. 2010) (stay granted pending resolution of a case brought by all of the same plaintiffs concerning the same claims for compensation but over a different time period). There is also more deference given to granting stays pending appellate review rather than trial court review. Farmer v. United States, 132 Fed. Cl. 343, 344-45 (2017) (stay granted in the Court of Federal Claims pending review of companion cases by the Federal Circuit). Administrative proceedings also generally have more definite and expedited timelines than cases proceeding in trial courts, so the resulting stay may not be considered indefinite. Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983) (stay granted pending a patent proceeding).

Here, the stay would be indefinite as Grames does not meet the above exceptions. None of the plaintiffs in Cheshire Hunt are party to Grames and the class in Grames is narrowly defined such that only a small percentage of the plaintiffs in the related rails-to-trails cases are implicated. Thus far, only five of the hundreds of plaintiffs in the nine rails-

to-trails cases before this court have any control over or role to play in Grames. Additionally, it could take several years for Grames to be resolved since it is pending in a federal District Court and could also be appealed. Grames is in its early stages, as the class has not yet been certified and the Government has not yet submitted their response. Because this motion calls for staying Cheshire Hunt pending resolution of another case, the Court now turns to the question of whether an indefinite stay is warranted.

### C. Cherokee Nation Three-Part Inquiry for Indefinite Stays

There is a three-part inquiry for determining whether a trial court should grant a motion to stay a case indefinitely pending the resolution of another case. This inquiry was established by the Federal Circuit in Cherokee Nation and was fleshed out in subsequent Court of Federal Claims decisions. 124 F.3d 1413. Collectively, these cases establish that though the trial court has the discretion to stay a case, it should only exercise that discretion if: (i) there is a pressing need; (ii) in balancing the interests for and against the stay, the court determines that the interests weigh more heavily in favor of a stay; and (iii) issuing the stay would be in compliance with the "court's paramount obligation to exercise jurisdiction timely in cases properly before it." Commonwealth Edison Co. v. United States, 46 Fed. Cl. 29, 34 (2000). The most relevant factors to consider in conducting this inquiry are the timelines of and the similarities and differences between the two cases. Here, both of these factors weigh against granting the stay.

## II. Factors Weigh Against Granting Stay

### A. Inconsistent Timelines

#### a. This case was filed first and is further along

A significant mismatch between the timelines of the two cases points towards denying the stay to avoid unnecessary delay. In National Bank of Detroit, the Court denied a stay pending resolution of the state court case against borrowers because the "federal litigation [against the Government for failing to pay the guaranty was] nearly ready for trial while the state court proceedings appear[ed] to be far from it." 1 Cl. Ct. at 716. There is, however, some debate among courts over whether the earlier date of filing or the further advanced proceedings should be given more weight in determining whether to stay a case. See New York Power Authority v. United States, 42 Fed. Cl. 795, 802 (1999). Here, Cheshire Hunt was both filed first and is further along in the proceedings. While Grames is still in the preliminary phase (with the Government's answer not yet filed), Cheshire Hunt is in the damages phase, as the Government has already stipulated to liability. Nevertheless, Cheshire Hunt remains in a standstill due to Grames. The disparity between the filing dates and the stage in proceedings between Cheshire Hunt and Grames is significant and points towards denying the stay.

b. This Court has no control over federal District Court proceedings

Where this Court has the authority to mandate a timeline for resolving the other dispute, a stay is sometimes justified. For example, in some cases running parallel to administrative law proceedings, this Court has taken the approach of requiring the other hearing to be finalized in a set amount of time. See Fadem v. United States, 13 Cl. Ct. 328, 332 (1987) (taking claim in this Court was stayed pending related tort claim before the Department of Interior since this Court ordered the Secretary of the Interior to decide the tort claim within six months). Similarly, the Court has found a stay appropriate where both cases were filed in this Court and involved all of the same plaintiffs because both the Court and plaintiffs had some control over the timing of the other proceeding. SMUD, 395 F. App'x at 687-88.

By contrast, in Cherokee Nation, while the Government had some control over bringing quiet title actions in state court, this Court did not have control over the timeline and found those actions could take several years because third-party landowners would be involved in the proceedings. 124 F.3d at 1418. The extended timeline was significant because it would have kept the plaintiffs "effectively out of court," so the stay was denied. Id.

This Court has no control over the timing in Grames. Grames, which involves a state law claim in the Middle District of Florida, is still in the early stages of briefing, and the Court cannot mandate a timeline for the judge in that case to follow. Moreover, none of the plaintiffs in Cheshire Hunt and most of the plaintiffs in these rails-to-trails cases are not involved in Grames, meaning that they also do not have any say in the timing of Grames. Sarasota County is also a party in Grames, further complicating and delaying the timeline in that case. Grames could take several years to resolve while Cheshire Hunt is already close to resolution and should not be further delayed.

B. Key Differences Between the Cases

a. The cases have different underlying facts and parties

When "material factual differences exist" between the two cases, the pressing need for a stay is not established. St. Bernard Par. Gov't v. United States, 99 Fed. Cl. 765, 769 (2011). For example, in St. Bernard, this Court denied staying a claim pertaining to historic flooding pending resolution of a case in federal District Court about the general risk of flooding caused by misfeasance, finding that the underlying facts required to prove the claims were distinct enough. Id. at 769. By contrast, when the same underlying facts have to be proven, the case should be stayed. See HighQBPO, 84 Fed. Cl. at 362 (staying case due to "substantial overlap" in witnesses and evidence). The same logic applies to staying a trial court case pending appellate review of a companion case if the underlying facts of companion cases are sufficiently similar. Farmer, 132 Fed. Cl. at 344-45.

Cheshire Hunt and Grames differ in that Cheshire Hunt concerns a specific historic taking and Grames involves the existing and future use and the nature of the property interest. While the Government argues that Grames will be persuasive authority for these nine rails-to-trails cases, it is not worth waiting potentially years for what would only be persuasive authority on one aspect of the valuation. The cases are different enough to warrant independent treatment, particularly considering that only five out of the hundreds of plaintiffs before this Court in the nine Sarasota County rails-to-trails cases are currently party to Grames, and the plaintiffs in Cheshire Hunt have expressed a desire to not be involved in Grames.

### b.  The plaintiffs have requested different forms of relief

Different requests for relief, particularly legal versus equitable relief, point towards denying a stay because the cases are substantially different. See Haddock v. United States, 135 Fed. Cl. 82, 91 (2017). The plaintiffs in Grames are seeking injunctive relief against the County to protect their structural enhancements and they are seeking to quiet title in their favor, whereas in Cheshire Hunt, the plaintiffs are seeking monetary compensation for a taking. Furthermore, the majority of plaintiffs in these cases are only seeking monetary relief from this Court as they are not party to Grames. Therefore, this factor too weighs against granting the stay.

### c.  The two cases are independent

If one case cannot be resolved without establishing a necessary factor in another case, then the dependent case should be stayed. In Freeman v. United States, this Court could not resolve the takings claims regarding mining rights without first determining that there was a compensable property interest (that the mining rights did in fact exist). 83 Fed. Cl. 530, 533 (2008). The Court granted a stay pending determination by the Bureau of Land Management that such an interest existed. Id. However, in Cherokee Nation, the Court held that damages calculations are not a prerequisite to determining liability. 124 F.3d at 1416. The case was not stayed pending quiet title actions to resolve the precise bounds of the land the Government was alleged to have mismanaged, because determining the exact boundaries of the tribes' lands was not essential for determining that the Government had breached its duty to manage those lands. Id.

Here, determining just compensation is not dependent on resolution of Grames. None of the plaintiffs in Cheshire Hunt are party to Grames and the issue and putative class in Grames is narrow. That case only applies to existing encroachments where demand letters have been issued by the County. Unlike in Freeman, the dispute here is over the nature of the property rights, not whether the property rights existed at all. This case looks more like Cherokee Nation because determining the exact nature of the property rights in Grames is not essential to determining liability in Cheshire Hunt. Since the Government

has already stipulated to liability, it is clear that property rights do exist. Though their nature may impact compensation, concerns about judicial economy are not sufficient to justify a stay.

### C. Judicial Economy Does Not Satisfy Pressing Need Requirement

The Government has raised concerns about the possibility of inconsistent decisions if this case is not stayed because a determination of the nature of the property interests implicated affects just compensation determinations. Despite being valid considerations, concerns about "avoid[ing] duplicative litigation and conserv[ing] judicial resources" do not satisfy the "pressing need" required to issue an indefinite stay. Cherokee Nation, 124 F.3d at 1416. It is not enough for the Court to grant a stay merely to resolve the disputes in as few proceedings as possible. Resolving the disputes with an eye towards timeliness is more important.

The cases in which concerns about comity and judicial economy have factored into the decision to grant a stay have involved instances where two parallel proceedings had significant similarities such that both cases progressing at once would be truly duplicative. See, e.g., Northrop Corp. v. United States, 27 Fed. Cl. 795, 801–02 (1993) (discovery stayed in case involving allegations of false claims by the Government pending resolution of federal District Court case involving allegations of false claims by private third parties). Here, concerns about judicial economy do not outweigh the balance of factors that point to denying the stay.

### Conclusion

Given the inconsistent timelines and lack of significant overlap between plaintiffs in the two cases, the Government has failed to establish the pressing need for a stay. It is in the interest of the hundreds of plaintiffs in these rails-to-trails cases and in the interest of this Court and the judicial system that this case proceed to its resolution without further delay. For these reasons, the Government's motion to stay is DENIED. The parties shall file a joint status report on or before July 23, 2020 indicating how they intend to proceed through the just compensation phase of this case.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge